JS6

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CLEAN OCEANS INC., a California corporation, | Case No.: 2:26-cv-03362-RGK-E |
| Plaintiff, | **CONSENT DECREE; FINAL JUDGMENT** |
| v. | |
| GEO. M. HUFF LUMBER COMPANY, a California corporation, | |
| Defendant. | |

///
///
///

CONSENT DECREE; FINAL JUDGMENT

## CONSENT DECREE

This Consent Decree (as defined below) is entered into as of the Effective Date (defined below) between Our Clean Oceans ("OCO") and Huff Lumber Company ("HLC") (each individually as a "Settling Party" or "Party," and collectively, "Settling Parties" or "Parties") based on the following facts:

**WHEREAS,** OCO is a 501(c)(3) non-profit corporation organized under the laws of the State of California, with its corporate headquarters in Newport Beach, California and a regional office in Beverly Hills, California;

**WHEREAS,** OCO is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, HLC owns and operates a facility at 13535 Rosecrans Avenue, Santa Fe Springs, CA 90670, under Waste Discharger Identification number 4 19I019350 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of cutting and milling lumber to manufacture various timber products. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2421, covering Sawmills and Planing Mills, General;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, it is alleged that HLC's operations at the Facility have resulted in discharges of pollutants into waters of the United States that are regulated by the Clean Water Act Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

2

CONSENT DECREE; FINAL JUDGMENT

**WHEREAS**, the General Permit requires all permittees, including HLC, to comply with, inter alia, the following mandates: (1) develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") and a storm water Monitoring Implementation Plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants in storm water discharges through the development and application of Best Management Practices ("BMPs"), which must be detailed and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with applicable water quality standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on October 23, 2025, OCO issued a notice of intent to file suit ("60-Day Notice Letter") to HLC, its registered agent, the United States Attorney General ("USAG"), the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, OCO's 60-Day Notice Letter alleged violations of the General Permit and the Clean Water Act for HLC's discharges of pollutants into storm drains and surface waters, including the Coyote Creek - North Fork, its tributaries, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, HLC denies all allegations in the 60-Day Notice Letter relating to the Facility;

**WHEREAS**, the Settling Parties agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to

3

CONSENT DECREE; FINAL JUDGMENT

resolving the allegations set forth in the 60-Day Notice Letter without further proceedings; and

**WHEREAS**, all actions taken by HLC pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    Our Clean Oceans has standing to bring this action.

5.    The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

**I.    OBJECTIVES**

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged or which could have been alleged by OCO in its Complaint and 60-Day Notice Letter.

7.    In light of these objectives and as set forth fully below, HLC agrees to comply with the provisions of this Consent Decree.

4

CONSENT DECREE; FINAL JUDGMENT

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    Agency Review and Consent Decree

8.    Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). If the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, to coordinate the Court's calendar with the 45-day review period.

10.    Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.    Definitions

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

5

CONSENT DECREE; FINAL JUDGMENT

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Agreement and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.    "Effective Date" means the effective date of this Consent Decree, which shall be the last date of full execution by the Parties.

h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.    "Forecasted Rain Event" means a forecasted rain event with a 50% or greater chance of 0.1 inches of precipitation as determined by the National Oceanic and Atmospheric Administration for "Whittier Hills (WTHC1)."[1]

j.    "MIP" means a Monitoring Implementation Plan.

k.    "NAL" means Numeric Action Level.

l.    "NEL" means Numeric Effluent Limitation.

---

[1] Available at https://forecast.weather.gov/MapClick.php?lat=33.9353&lon=-118.0643.

CONSENT DECREE; FINAL JUDGMENT

m.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.   "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.   "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.   "Sample Point" means each designated industrial storm water monitoring location identified in the then-current SWPPP for the Facility.

q.   "SMARTS" means the California State Water Resources Control Board's Storm Water Multiple Application and Report Tracking System.

r.   "SWPPP" means a Storm Water Pollution Prevention Plan.

s.   "Term" means the period between the Effective Date and the "Termination Date."

t.   "Termination Date" means:

i.   Two (2) years from the Effective Date of this Consent Decree;

ii.   Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated before termination as defined in Paragraphs 3.t.i if resolution extends beyond termination; or

iii.   Seven (7) days from the Facility's completion of all payments and other affirmative duties required by this Consent Decree if any are pending at the time of termination as defined in Paragraphs 3.t.i.

7

CONSENT DECREE; FINAL JUDGMENT

u.    "Wet Season" means the period beginning October 1st of any given calendar year and ending March 31st of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    Storm Water Pollution Control Best Management Practices

12.    <u>Current and Additional Best Management Practices</u>. HLC shall implement the BMPs identified in its SWPPP and develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

13.    <u>Structural and Non-Structural BMPs for the Facility</u>. As a result of the 60-Day Notice Letter, HLC coated the dust collection ducts, the primary cyclones, and the outfeed conveyor on the small mill to mitigate the contact of storm water with this metal equipment.  Further, HLC shall develop, implement, and/or maintain the following BMPs at the Facility:

(1) Within 60 days of the Effective Date:

a.    Maintain daily sweeping schedule of paved areas utilizing the Tennant S30 Ride-On Sweeper, including before Forecasted Rain Events;

b.    Maintain daily hand sweeping of sawdust around equipment during employee downtime and/or between projects;

c.    Avoid the overfilling of scrap metal and waste wood/sawdust containers, and close/cover them when not in use and before Forecasted Rain Events;

d.    Institute an equipment and vehicle maintenance program that ensures:

i.    no maintenance activities occur outside during wet weather, unless such maintenance is required for safe

8

CONSENT DECREE; FINAL JUDGMENT

operation of the Facility (i.e. a forklift breaks down in a location that prevents ingress/egress); and

    ii.  maintenance activities occur only in designated work areas or beneath covered maintenance areas;

(2) Before the start of the 2026-2027 Wet Season:

    e.  Implement wattles (straw and/or metal filtering) as needed at SP 1 (East Gate) and SP 2 (North Gate) and/or along associated storm water flow paths before Forecasted Rain Events;

    f.  Institute a formal pre-rain protocol to be implemented within twenty-four (24) hours before a Forecasted Rain Event. This protocol shall include, to the extent feasible, minimizing the exposure of industrial materials and waste(s) located on the paved surfaces of the Facility to rainfall;

    g.  As necessary, replace or maintain any implemented wattles, socks, and/or filter devices when degraded or ineffective, including when there are rips, tears or other visual damage, and/or sampling data demonstrates the filtration devices are not sufficiently reducing pollutant concentrations;

    h.  Inspect and evaluate the need for rip-rap and/or gravel replenishment at the interface of paved and unpaved portions of the Facility; and before the start of the 2026-2027 Wet Season, install 10-15 feet width of rip-rap and/or gravel along the length of all intersections interfacing the paved and unpaved portions of the Facility to stabilize loose soil, prevent tracking, and reduce associated Total Suspended Solids (TSS) and metals in storm water; and

    i.  Within fourteen (14) days of the above BMPs being implemented, HLC shall confirm to OCO via email with

9

CONSENT DECREE; FINAL JUDGMENT

photographs where photographic verification is possible, that such BMPs have been implemented as set forth above.

**B.     Sampling at the Facility**

14.     Regulatory Sampling. During the Term, HLC shall collect samples of storm water discharge from each Sample Point identified in the Facility's SWPPP updated pursuant to this Consent Decree, from QSEs as required by General Permit § XI.B. If HLC is unable to collect samples for a potential QSE, HLC shall provide an explanation via email within fourteen (14) days of a written request by OCO.

15.     Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1, except for any investigative background sampling performed by HLC that only requires analysis of specific, limited parameters.

16.     Laboratory and Holding Time. Except for pH samples, HLC shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite within fifteen minutes of sample collection pursuant to 40 C.F.R. Part 136.

17.     Detection Limit. HLC shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

18.     Reporting. HLC shall provide OCO with notice via email within fourteen (14) days of uploading and certifying laboratory results from a collected sample to SMARTS in accordance with the General Permit.

**C.     Reduction of Pollutants in Discharges**

19.     Table 1 Numeric Limits. HLC shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

10

CONSENT DECREE; FINAL JUDGMENT

**TABLE 1**[2]

| Parameter | Numeric Limit | Source of Limit |
|-----------|---------------|-----------------|
| Zn | 0.26/0.158 mg/L | NAL/NEL |
| Cu | 0.0332/0.027 mg/L | NAL/NEL |
| COD | 120 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| pH | 6.0-9.0 s.u. | NAL |
| O&G | 15 mg/L | NAL |

20.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined consistent with Paragraph I.N.76 and Paragraph V.C.1 of the General Permit.

21.    Action Plan for Table 1 Exceedances. During the Term, if HLC's storm water samples demonstrate an Exceedance as defined above, HLC shall prepare and submit to OCO a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The complete Action Plan shall be submitted to OCO by August 15th of the Reporting Year after the Reporting Year in which an Exceedance occurred.

a.    Action Plan Requirements. The content of the Action Plan submitted shall be consistent with those of the General Permit's Exceedance Response Action ("ERA") requirements and/or Water Quality Based Corrective Action (WQBCA) requirements as applicable.  However, shop vacuums, metal filtering socks, and/or wattles will be specifically considered for implementation. Within fourteen (14) days of the BMPs set forth in the Action Plan being implemented, HLC shall confirm to OCO via email, with photographs where photographic

---

[2] The numeric limits listed in Table 1 are intended to be consistent with the then-effective parameter limits provided by the General Permit or other applicable source, e.g., if the applicable source for Zinc establishes its NAL and the NAL for Zinc is either increased to 0.3 mg/L or decreased to 0.20 mg/L, such new NAL, and not 0.26 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein.

CONSENT DECREE; FINAL JUDGMENT

verification is possible, that such BMPs have been implemented as set forth in the Action Plan.

b.   Action Plan Review. OCO shall have thirty (30) days upon receipt of HLC's complete Action Plan to provide HLC with comments. Within fourteen (14) days of receiving OCO's proposed revisions to an Action Plan, HLC shall consider each of OCO's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

c.   HLC shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as required by the General Permit.

d.   Action Plan Payments. All Action Plan payments are part of and incorporated into Compliance Monitoring costs as set forth in Paragraph 28 herein.

e.   Pursuant to Paragraph 3.t.iii of this Consent Decree, HLC's affirmative obligations in this Section (21), if applicable, shall survive until completed.

**D.   Visual Observations and SWPPP**

22.   Storm Water Discharge Observations. During the Term, appropriately trained staff of HLC shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

12

CONSENT DECREE; FINAL JUDGMENT

23.     Monthly Visual Observations. During the Term, appropriately trained staff of HLC shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof.

24.     Visual Observations Records. HLC shall maintain observation records to document compliance with Paragraphs 22 and 23 in accordance with Section XI.A.3. of the General Permit and any successor thereof. HLC shall provide OCO with a copy of those records within fourteen (14) days of receipt of a written request from OCO for those records.

**E.     Training and Plans**

25.     Employee Training Program. During the Term, before the start of the Wet Season, HLC shall provide a QISP-conducted training to personnel responsible for implementing General Permit compliance at the site pursuant to Section X.H.1.f of the General Permit.

26.     SWPPP Revisions.

a.     Initial SWPPP Revisions. HLC shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit. The updated SWPPP shall be submitted to OCO within sixty (60) days of the Effective Date for OCO's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.     The requirements of Section X of the General Permit; and

ii.     The BMPs identified in Paragraph 13 of this Consent Decree.

b.     Additional SWPPP Revisions.

i.     Within thirty (30) days after approval of any Action Plan by OCO, HLC shall revise the then-current SWPPP to

13

CONSENT DECREE; FINAL JUDGMENT

reflect the changes required by the Action Plan and submit the updated SWPPP to OCO.

**F.    Compliance Monitoring and Reporting**

27.    Document Provision. During the Term, HLC shall notify and submit documents to OCO as follows:

a.    HLC shall notify OCO within fourteen (14) days, by electronic mail to the individual(s) designated below at Paragraph 50, when storm water sample analytical results and Facility SWPPP updates are submitted/certified to SMARTS and/or investigative storm water sample analytical results are received from the laboratory as explained above. Additionally, HLC shall notify OCO via email within fourteen (14) days of receipt of any enforcement actions concerning stormwater by the Regional Board, the State Board, and/or any state or local agency, county, or municipality.

28.    Compliance Monitoring. HLC shall partially defray costs associated with OCO's monitoring of HLC's compliance with this Consent Decree during the Term by paying Ten Thousand Dollars ($10,000), which represents $5,000 per each year of the Term. The payment will be made within fourteen (14) days of the Entry Date of this Consent Decree. The payment shall be made via check, made payable to: Our Clean Oceans, sent via overnight carrier to 2618 San Miguel Suite 1885, Newport Beach, CA 92660. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**G.    Environmentally Mitigation Project, Litigation Fees and Costs and Costs, Missed Deadlines**

29.    Environmental Mitigation Project. To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities that discharge to waters tributary to the Coyote Creek - North

14

CONSENT DECREE; FINAL JUDGMENT

Fork, HLC shall make a payment totaling Five Thousand Dollars ($5,000) to the Rose Foundation made within fourteen (14) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight carrier to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

30.    OCO's Fees and Costs. HLC shall pay a total of Forty-Seven Thousand Dollars ($47,000) to OCO to reimburse OCO for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and negotiating a resolution of this matter within fourteen (14) days of the Entry Date. The payment shall be made payable to: Actium LLP, 99 South Lake Avenue Suite 501, Pasadena, California 91101, delivered via overnight carrier. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

31.    Missed Deadlines. In the event that OCO provides notice of any failure by HLC to submit to OCO any payment, document, report, or communication required by this Consent Decree, and HLC fails to correct such deficiency within 5 business days of such notice, HLC shall pay a stipulated payment of Five Hundred Dollars ($500) for each occurrence. However, this 5-day grace-period for correction shall not apply to the initial payments due under this Consent Decree in Paragraphs 28, 29, and 30. Such stipulated payments shall be made by check payable to: Our Clean Oceans, sent via overnight carrier to 2618 San Miguel Suite 1885, Newport Beach, CA 92660. HLC agrees to make the stipulated payment within twenty-one (21) days after the resolution of the event that precipitated the stipulated payment liability.

## IV.    DISPUTE RESOLUTION

32.    Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in

15

CONSENT DECREE; FINAL JUDGMENT

writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days following the meet and confer.

33.     Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 32 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

34.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.     MUTUAL RELEASE OF LIABILITY AND COVENANTS NOT TO SUE

35.     OCO's Waiver and Release of HLC. In consideration of the above, upon the Entry Date of this Consent Decree, OCO, on its own behalf and on behalf of its officers and directors, releases and waives any and all claims against HLC, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, that were raised in the 60-Day Notice Letter, up to and including the Termination Date of this Consent Decree.

36.     HLC's Waiver and Release of OCO. In consideration of the above, upon the Entry Date of this Consent Decree, HLC, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their

16

CONSENT DECREE; FINAL JUDGMENT

successors or assigns, releases and waives any and all claims against OCO, its officers and directors, related to the 60-Day Notice Letter, up to and including the Termination Date of this Consent Decree.

## VI.    MISCELLANEOUS PROVISIONS

37.    No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. HLC maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Electronic transfers of original or digital signature shall be deemed to be an originally executed counterpart of this Consent Decree.

39.    Authority. The undersigned representatives for OCO and HLC each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

40.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

41.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

42.    Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement

17

CONSENT DECREE; FINAL JUDGMENT

between the Parties and expressly supersedes all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

43.    Severability. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44.    Choice of Law. The laws of the United States shall govern this Consent Decree.

45.    Effect of Consent Decree. Compliance with this Consent Decree does not mean HLC is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

46.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree and agree it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

47.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

48.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. HCL shall notify OCO within thirty (30) days of any assignment.

49.    Force Majeure. Neither of the Parties shall be deemed in default in the performance of any of their respective obligations under this Consent Decree when

18

CONSENT DECREE; FINAL JUDGMENT

performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected: (i) to avoid the Force Majeure event, and (ii) by exercise of due diligence to be able to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

50.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to OCO:
Our Clean Oceans, Inc.
Compliance Manager
2618 San Miguel, Suite 1885
Newport Beach, CA 92660
Email: reporting@ourcleanoceans.org
Phone: (833) 241-8799

If to HLC:
Huff Lumber Company
Mark Huff
President
13535 Rosecrans Avenue
Santa Fe Springs, CA 90670
Email :mark@hufflumber.net
Phone : (562) 921-1331

19

CONSENT DECREE; FINAL JUDGMENT

| With copies to: | With copies to: |
|---|---|
| Mares Legal, P.C. | StilesPomeroy LLP |
| Tim Mares | Charles H. Pomeroy, Esq. |
| 240 W Chapman Ave., Suite 200 | 150 N. Santa Anita Ave., Suite 300 |
| Orange, CA 92866 | Arcadia, CA 91006 |
| Email: tim@mareslegalpc.com | Email: cpomeroy@stilespomeroy.com |
| Phone: (310) 940-7433 | Phone: (626) 243-5599 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

51.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

Dated: April 6_____, 2026          By: *s/ Gaspare Guarrasi*_____

20

CONSENT DECREE; FINAL JUDGMENT

Gaspare Guarrasi
Executive Director
Our Clean Oceans, Inc.

Dated: April 8                , 2026            By: *s/ Mark A. Huff*
                                                      Mark Huff
                                                      President
                                                      Huff Lumber Company

CONSENT DECREE; FINAL JUDGMENT

# FINAL JUDGMENT

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

The Clerk shall close this action.

**IT IS SO ORDERED.**

Dated: 5/29/2026

_____
Honorable R. Gary Klausner
United States District Judge

CONSENT DECREE; FINAL JUDGMENT